UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**H&E EQUIPMENT SERVICES, INC.**                    CIVIL ACTION

**VERSUS**

**WALTER COMEAUX, ET AL.**                         NO.: 20-225-BAJ-EWD

RULING AND ORDER

Before the Court is H&E Equipment Services, Inc.'s (Plaintiff or H&E) **Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 5)**. Plaintiff seeks a court order requiring the return of trade secrets, requiring that access be given to certain devices to confirm that any trade secrets that were taken were not copied, and enjoining Defendants from using or destroying confidential information. Defendants filed Oppositions (Doc. 18-19). Plaintiff filed a Reply (Doc. 24). For the reasons stated herein, Plaintiff's **Motion (Doc. 5)** is **GRANTED IN PART** and **DENIED IN PART**.

   **I.    FACTS**

Defendant Walter Comeaux was hired by H&E in April 2012 and served as an Account Coordinator and later a Fleet Manager. Comeaux resigned from H&E on February 28, 2020. The day before, on February 27, 2020, Comeaux left H&E's office and drove to the offices of EquipmentShare, his current employer, to pick up his EquipmentShare laptop computer. A forensic review of Comeaux's H&E-issued laptop revealed that in the sixty minutes before Comeaux left H&E's offices, he

1

downloaded two highly sensitive documents containing certain business information of H&E. The first of these documents was an Equipment Sales Report showing nationwide equipment sales from January 1, 2020 through February 27, 2020. The second was an Excel spreadsheet with data containing costs, maintenance expenses, profits, and other information related to H&E's rental fleet. It appeared to have been created that same afternoon. The same forensic review also revealed that, at various times, Comeaux installed four separate storage devices into his H&E-issued laptop on February 27, one of which remained plugged in overnight. H&E believes that Comeaux provided EquipmentShare with its confidential business information and that EquipmentShare willingly accepted the misappropriated information.

## II.    LEGAL STANDARDS

### A. Injunctive Relief

To obtain injunctive relief, Plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest. *See Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).

### B. Louisiana Uniform Trade Secrets Act ("LUTSA")

Broadly, the LUTSA proscribes the misappropriation of information that constitutes "trade secrets." *Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612, 628 (W.D. La. 2010).

"In order to show that the trade secrets have been misappropriated, [the employer] would have to prove that (1) a trade secret existed, and (2) that they were misappropriated by the [employee]." (*Id.* at 628–29). The term "misappropriation" is defined as "disclosure or use of a trade secret of another without express or implied consent by a person who ... at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." (*Id.* at 629).

"'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that ... derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and ... is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.*

### C. Defend Trade Secrets Act ("DTSA")

To state a claim under the DTSA, a plaintiff must allege (1) the existence of a trade secret, (2) misappropriation of the trade secret by another, and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce.[1] *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 517 (E.D. La. 2018).

---

[1] The DTSA defines "misappropriation" as:
    (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
    (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
        (i) used improper means to acquire knowledge of the trade secret;

3

A "trade secret," as defined in the DTSA, includes scientific and technical information that "the owner thereof has taken reasonable measures to keep ... secret" and "derives independent economic value ... from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." (*Id.* at 517–18).

### III.  DISCUSSION

#### A. Request for Relief

Plaintiff does not claim that any of its employees actually witnessed Comeaux in the act of downloading confidential or proprietary information.  Rather, Plaintiff has identified several suspicious facts surrounding Comeaux's downloading of the Equipment Sales Report and Excel spreadsheet before he traveled to EquipmentShare on February 27.

First, Comeaux told Shane Waguespack, a senior vice president of H&E, that he was required to leave the office early that day to attend to his mother[2].  Second,

---

(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
    (I) derived from or through a person who had used improper means to acquire the trade secret;
    (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
    (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
(iii) before a material change of the position of the person, knew or had reason to know that—
    (I) the trade secret was a trade secret; and
    (II) knowledge of the trade secret had been acquired by accident or mistake

18 U.S.C. § 1839(5).

[2] Comeaux has offered no specific reasons why he was required to attend to his mother on that day, other than to indicate that she is elderly and that he performs caregiver-like duties for her.

4

the Equipment Sales Report that Comeaux downloaded included nationwide sales data, rather than regional sales data. Waguespack testified that he did not believe that Comeaux had a legitimate purpose for creating the national sales report because it was not the type of report that, as a regional manager, Comeaux typically would have created for a regional vice president. Further, Plaintiff's computer forensics expert conducted a comprehensive inspection of the device but could not find any similarly named files on Plaintiff's H&E laptop, and the report Comeaux downloaded was not emailed to anyone at H&E after Comeaux downloaded it. Third, Comeaux accessed the server containing the information in the Excel spreadsheet ("the Tableau Server") on February 27, his last full day of employment at H&E, and exported the information from the server to an Excel spreadsheet, which Waguespack testified was highly unusual under the circumstances.[3]

Comeaux testified that he did in fact visit his mother on February 27. However, he denied sharing the Equipment Sales Report or the Excel spreadsheet with anyone at EquipmentShare.

Comeaux further testified that, as a Fleet Manager, he would periodically run sales reports, mainly at the requests of regional vice presidents. However, according to Comeaux, it was not out of the ordinary for him to run nationwide sales reports, yet he could not recall if he ever previously emailed a nationwide sales report to anyone during his tenure at H&E.

---

[3] The Tableau Server provides information on H&E's rental fleet and is accessible via an H&E computer.

5

Regarding the Excel spreadsheet, Comeaux admitted that he had full access to the Tableau Server containing the data and that it was normal for him as Fleet Manager to access the Tableau Server. He further testified that it was his practice, when accessing the Tableau Server, to export data from the server to an Excel spreadsheet because he could read the data better in that format.

Plaintiff also established at the evidentiary hearing that H&E documents were found on the four portable storage drives. The fourth storage drive contains numerous files that directly relate to H&E's business, including three national pricing templates dated September 4, 2014 and a Word document that describes the job duties in one of H&E's business departments. The other three drives contained no active files. There were no deleted files on the first drive or the third drive; however, evidence of a deleted file was found on the second drive, which included detailed H&E budget information.

Comeaux testified that he has not disclosed the national pricing templates or the Word document to anyone at EquipmentShare. He claims that he inadvertently copied the materials onto the fourth thumb drive in an attempt to take his personal information with him when he left H&E. Comeaux also denies utilizing the other three drives after he left H&E.

Lastly, Plaintiff identified suspicious circumstances concerning the removal of documents from Comeaux's office. Waguespack testified that Comeaux regularly kept an array of business documents at his desk; however, after Comeaux left H&E, the area was completely clear of any documents. Comeaux did not deliver any hard copies

6

of business documents or other materials to Waguespack or any other person at H&E at the time of his resignation. Plaintiff pointed out that H&E's policies prohibit employees from destroying company files and records.

Comeaux has denied destroying H&E papers or materials or having taken them with him when he left H&E on February 28. He testified that his desk area was clear because he had recently moved into his cubicle and did not have the opportunity to accumulate many papers or materials prior to his resignation.

Under these circumstances, the Court finds that Plaintiff has shown a substantial likelihood of prevailing on the merits of this Motion. Waguespack testified that he considers the Equipment Sales Report, the Excel spreadsheet, the "IConnect Training Department Brad Working Document," and H&E's budget information all to be confidential business information that H&E has attempted to protect from disclosure. These efforts include requiring employees such as Comeaux to certify compliance with H&E's Code of Conduct prohibiting disclosure, requiring users to log onto their accounts with passwords, limiting the files that are available to each employee, and maintaining locks and other security devices on the outside of the building. Comeaux's conduct in the closing days of his career at H&E certainly raise the specter of unethical, and possibly unlawful, conduct. The Court cannot, at this stage, dismiss Comeaux's activities as insignificant or merely coincidental. Considering the totality of the circumstances here, the Court finds that Plaintiff has established a likelihood of prevailing on the merits of its claims against Defendants.

7

Moreover, Plaintiff has demonstrated a sufficiently substantial threat of irreparable injury if relief is not immediately ordered. If Plaintiff can establish at trial that Comeaux breached his duties to H&E by sharing confidential and proprietary information, and that EquipmentShare stands to obtain a competitive advantage from its possession and use of such information, then Plaintiff has clearly demonstrated that the threatened injury to Plaintiff outweighs any harm that may result to Defendants if the injunction is not granted.

Lastly, the injunction contemplated herein will not disserve the public interest. Accordingly, the Court finds that Plaintiff has met the requirements for injunctive relief.

### B. Remedies

The remedies requested by the Plaintiff, under the circumstances, are reasonable to ensure the identification, protection and return of any of its confidential data that may have been misappropriated. However, the Court will not, at this time, provide H&E with immediate access to EquipmentShare's computer servers or any EquipmentShare computers, tablets, smart phones or other devices used by Comeaux since February 27, 2020 for forensic examination. However, EquipmentShare must preserve these devices, and not alter or delete data on them, pending possible forensic review.

Absent an agreement of the Parties, any forensic review ordered herein shall take place during the discovery phase of this case, in a manner set forth by the Magistrate Judge.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 5)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants, and anyone acting in concert with Defendants, are enjoined from directly or indirectly possessing, utilizing, disclosing, and/or transmitting to anyone any of H&E's business information, including, but not limited to, customer lists and files and financial data, transactional histories, performance data, inventories, equipment sales reports, and the like.

**IT IS FURTHER ORDERED** that Defendants, and anyone acting in concert with Defendants, are enjoined from destroying, altering, erasing, secreting, or failing to preserve or otherwise making unavailable for further proceedings in this matter any and all of H&E's business materials, property, information, customer lists and files, confidential information and/or trade secrets, or any other records or documents that may be relevant to this lawsuit, wherever located and in whatever form, including, but not limited to, any document, envelope, invoice, email, database report, software file, electronic data, tangible evidence, financial records, and any and all communications between or among Defendants or any other person with regard to the foregoing.

**IT IS FURTHER ORDERED** that Defendants, and anyone acting in concert with Defendants, return any and all records or information of H&E currently in

Defendants' possession, custody, or control or that at one time was in their possession, custody, or control, but was transmitted to another person or entity, including, but not limited to, any and all information contained from such records.

**IT IS FURTHER ORDERED** that EquipmentShare shall preserve all devices, including servers, computers, tablets and smart phones, used by Comeaux since February 27, 2020, and all data on such devices pending a possible forensic examination.

Baton Rouge, Louisiana, this 30th day of July, 2020

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**